## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

ALEXIS GREEN,                          )
                                       )
                    Plaintiff,         )
                                       )
v.                                     )          Case No. 10-CV-449-CVE-PJC
                                       )
PARAGON FILMS, INC.,                   )
                                       )
                    Defendant.         )

## OPINION AND ORDER

This matter comes on for consideration of Defendant Paragon Films, Inc.'s Motion for

Summary Judgment and Brief in Support (Dkt. # 29). Defendant Paragon Films, Inc. (Paragon)

seeks summary judgment as to all of plaintiff's claims. Plaintiff responds that similarly situated

Caucasian employees were treated more favorably by Paragon and that this factual dispute precludes

summary judgment on plaintiff's employment discrimination claims under Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000 et seq. (Title VII), and 42 U.S.C. § 1981.

## I.

Paragon regularly hires temporary employees in many of its departments depending on need,

and Loye Mathews, Paragon's production manager, or individual supervisors will contact Jennifer

Frazier, an employee in Paragon's human resources department, to make a request to hire a

temporary employee. Alexis Green sought temporary employment through Premier Staffing and

Green was placed with Paragon as a temporary employee. Dkt. # 29-2, at 1. Green's temporary

employment began on March 11, 2009 and he was placed in an entry-level position as a packaging

specialist. Green's primary duty as a packaging specialist was to operate a forklift, and his team

manager was Adam Boren. Green's temporary employment ended on April 11, 2009 due to a

reduction in work, but Boren advised Green to fill out an application for permanent employment. Dkt. # 29-3, at 8-10; Dkt. # 29-5. Green took Boren's advice and submitted an application on April 21, 2009. Dkt. # 29-6.

Paragon notified Premier Staffing that it would need temporary employees beginning in May 2009, and Teresa Graves, an employee of Premier Staffing, asked Paragon if it would like Green back. Dkt. # 29-7. Boren responded that "[Green] did alright and was here every shift. I would bring [Green] back." Id. On May 6, 2009, Paragon rehired Green as a temporary employee and Boren recommended to Mathews that Paragon "go through the formality of possibly taking on [Green] full time." Dkt. # 40-2, at 6. Green states that he believed, based on a statement by an employee of Premier Staffing, that Paragon had a requirement that a temporary employee must work 90 days before being considered for permanent employment. Dkt. # 40-1, at 12-13. However, Paragon denies that there is a formal waiting period. Mathews states that there is an evaluation process for temporary employees that can range from immediate hiring to a two or three month evaluation period. Dkt. # 29-1, at 8-9. Factors that Paragon might consider when deciding whether to offer a temporary employee a full-time position include the temporary employee's attendance, performance, attitude, and workplace safety. Id. at 12. Paragon records a temporary employee's hours on a time sheet, but does not keep long-term attendance records for temporary employees. Id. at 12-13. Paragon also does not issue formal discipline to a temporary employee and it does not keep records of informal discipline, such as verbal counseling, of temporary employees. Dkt. # 29-4, at 7-10.

Green wanted to resume working for Paragon because he enjoyed driving a forklift, and he described the work as "easy" and "fun." Dkt. # 29-3, at 12-13. Boren asked Frazier if Green had

submitted an application for full-time employment, and Boren was told that Green's application could not be found.[1]  Dkt. # 29-8.  Green assumed that he would be considered for permanent employment after 90 days of temporary employment, but he admits that no one at Paragon or Premier Staffing made any statement to Green about a 90 day waiting period.  Dkt. # 29-3, at 16-17.  During Green's second term of temporary employment, he was assigned to work as a line operator on Line 1 and Boren believes that Green requested to be assigned to this position.  Dkt. # 29-4, at 24-25.  Boren had inquired as to the availability of a full-time position for a forklift operator, but was informed that an open position in the shipping and receiving department had already been filled.  Dkt. # 29-3, at 53.  The employee hired to fill this position was African-American.  Id.  Boren testified in his deposition that Green did not do a "real good job" on Line 1, and Boren moved Green to Line 8 for Green to receive additional training and to work on a slower production line.  Id. at 25.

 Green claims that Boren refused to train him or answer his questions, but Boren would provide training to Jeremy Breedlove, a Caucasian co-worker.  Dkt. # 40-1, at 39-40.  Terrence Jones, an African-American senior coordinator, taught Green how to use the machinery and allegedly told Green that "you black, they not going to show you nothing."  Dkt. # 29-3, at 33.  Jones also told Green that he should come to work on his days off for extra training.  Id.  Green came in for training on his days off and Breedlove also came for additional training on his days off.  Dkt. # 40-1, at 40.  Green believed that Boren was treating him differently than Caucasian employees, but he could not

---

[1]      Paragon found plaintiff's missing application and produced it to plaintiff during discovery.  See Dkt. # 40-4.  Plaintiff claims that the application was never missing and this was an "excuse" offered by Paragon to deflect plaintiff's questions about the possibility of moving into a full-time position.  Dkt. # 40, at 8.  However, plaintiff has offered no evidence in support of such an inference, and the Court declines to infer that mere misplacement of an application is evidence of racial discrimination.

recall a specific statement or act by Boren that was racist or discriminatory in nature. Id. at 21-22. Green did not raise his concerns about racial discrimination to Boren, but claims that he was reluctant to do so because Boren was friendly with the two employees responsible for training Green. Dkt. # 29-3, at 37.

Green claims that two Caucasian temporary employees, Breedlove and Jonathon Lovelady, had been employed for less time than Green but were offered permanent positions, and Green was upset that Paragon had not given him a permanent position. Dkt. # 40-1, at 14-16. However, Paragon claims that it noticed a decline in Green's job performance. Mathews and Boren talked to Green about his cellular phone usage during work hours, because Paragon safety policies precluded the use of cellular phones on the line.[2] Dkt. # 29-1, at 16. Green testified in his deposition that this safety policy was loosely enforced and many employees regularly used cellular phones while working. Dkt. # 40-1, at 41-42. Green perceived that Caucasian employees were not disciplined for violating the cellular phone policy and he believed that he was singled out when he would use a cellular telephone. Id. at 42. Green did receive a pay raise from $10.00 to $10.50 per hour on June 15, 2009, and he claims that this shows his performance was satisfactory. Dkt. # 40-6.

Shortly after 8:00 p.m. at the end of Green's shift on August 7, 2009, Boren spoke to Green and told Green that his temporary employment was being terminated. Dkt. # 29-3, at 7. At 10:46 a.m. on August 7, 2009, Boren had sent an e-mail to Frazier asking that she find a new temporary

---

[2]     Paragon had an official policy limiting the use of electronic devices, such as cellular phones, to designated break times or for official business only. Dkt. # 29-11. The policy states that "[a]ny unapproved use of these items will be considered a safety violation." Id. Boren testified in his deposition that he had terminated employees solely for violating safety policies, but it is not clear if Boren was referring specifically to violations of the cellular phone policy. Dkt. # 57-8, at 11.

4

employee to replace Green. Dkt. # 29-3. The e-mail does not give a reason for Green's termination.[3] Green states that he spoke to Mathews at about 7:00 p.m. on August 7, 2009, or about one hour before his shift ended, and told Mathews that he believed he had not received a permanent position because of racial discrimination.[4] Dkt. # 29-3, at 19. Mathews did not inform Boren of Green's allegations before Boren terminated Green's employment. Dkt. # 29-4, at 20-21. Green claims that he told a co-worker, Mike Williams, that he was going to contact an attorney about alleged racial discrimination at Paragon, and he believes that Williams relayed this information to Boren. Dkt. # 29-3, at 45-46. However, Green has no personal knowledge that Boren and Williams actually discussed this matter. Id. Green does not recall any employee at Paragon making a racist statement to him, but he claims that a Caucasian employee, Tim Smith, was advised by Boren not to be a friend of Green. Dkt. # 40-1, at 24. Green believes that Boren's alleged advice to Smith was racially motivated. Id. Green recalls two incidents when Boren admonished Green for exercising during breaks, but Boren did not stop Breedlove from exercising on breaks. Dkt. # 29-3,

---

[3]     On October 21, 2009, Boren sent an e-mail to Frazier stating that Boren was "having to tell [Green] constantly to keep his line clean and he would not stay off the cell phone while he was on the line. He also did not show that much interest in learning the job. Also, his attendance was not the greatest so I decided to end his assignment permanently on 8-07-09." Dkt. # 57-7. Defendant has not produced any document created contemporaneously with Green's termination containing this explanation for Green's termination, and it appears that this e-mail was sent after Green filed a charge with the Equal Employment Opportunity Commission (EEOC).

[4]     Plaintiff also claims that he made complaints of racial discrimination to Boren and Frazier beginning about two weeks before his employment was terminated. Dkt. # 40, at 11. However, the evidence cited by plaintiff does not support this statement. Plaintiff testified in his deposition that he called Boren and Frazier to inquire about his application for full-time employment, and he did not receive a response. Dkt. # 40-1, at 5-6, 27-28. The evidence shows that plaintiff inquired about the status of his application, but his deposition testimony does not show that he actually made any allegation of racial discrimination to Frazier or Boren before his employment was terminated.

at 55-56.  Green described two incidents when Chad Chisum, a Caucasian co-worker knocked over boxes and Green believed the Chisum's actions were racially motivated, but Green did not report either incident to anyone at Paragon.[5]  Id. at 43-44.

Plaintiff filed this case alleging claims of racial discrimination, failure to promote, and retaliatory discharge under Title VII, a separate claim of racial discrimination under § 1981, and intentional infliction of emotional distress under Oklahoma law.  Dkt.# 2.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993).  The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex, 477 U.S. at 317.  "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the

---

[5]    Plaintiff's deposition testimony is inconsistent on this point.  Plaintiff initially testified that Chisum knocked over boxes on a daily basis.  Dkt. # 40-1, at 10.  However, he subsequently testified that this occurred only twice.  Dkt. # 29-3, at 44.  For the purpose of ruling on defendant's motion for summary judgment, the number of times Chisum knocked over boxes is irrelevant unless plaintiff can show that Chisum's actions were racially motivated.

record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

Defendant argues that it is entitled to summary judgment on all of plaintiff's claims, because plaintiff cannot establish a prima facie case of employment discrimination under any theory and he has no evidence that defendant's legitimate, non-discriminatory reason for terminating his employment or refusing to move him into a full-time position was pretextual. Defendant also seeks summary judgment as to plaintiff's claim of intentional infliction of emotional distress. Plaintiff responds that Caucasian employees at Paragon were generally treated better than African-American employees, and that there are genuine issues of material fact precluding summary judgment on plaintiff's employment discrimination claims.[6]

---

[6]     Plaintiff's summary judgment response does not address his claim of intentional infliction of emotional distress. Even though plaintiff has failed to respond to defendant's motion for summary judgment on this claim, the Court must examine the record to determine if summary judgment is appropriate. Reed v. Bennett, 312 F.3d 1190, 1195 (10th Cir. 2002) ("a party's failure to file a response to a summary judgment motion is not, by itself, a sufficient basis on which to enter judgment against the party").

**A.**

Defendant argues that it had a legitimate, non-discriminatory reason for terminating plaintiff's employment and for not offering him a permanent position, and plaintiff has not produced sufficient evidence to show that defendant's reason is pretextual. Plaintiff claims that defendant discriminated against him based on his race, and defendant's failure to hire him as a permanent employee and/ or promote him constitute separate adverse employment actions.[7]

Plaintiff does not have direct evidence of discrimination and the Court must apply the McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973), burden-shifting analysis when reviewing plaintiff's claims.[8] Plaintiff must first establish a prima facie case of racial discrimination. Carney v. City and County of Denver, 534 F.3d 1269, 1273 (10th Cir. 2008). To establish a prima facie case based on a wrongful discharge theory, plaintiff is required to produce evidence raising a genuine issue of material fact showing that "(1) he belongs to a protected class; (2) he was qualified for his job; (3) despite his qualifications, he was discharged, and (4) the job was not eliminated after his discharge." Rivera v. City and County of Denver, 365 F.3d 912, 920 (10th Cir. 2004). Under a failure to promote theory, plaintiff must establish that "(1) he is a member of a protected class; (2)

---

[7]     The parties disagree as to the proper characterization of plaintiff's racial discrimination claims. In his complaint, plaintiff alleges separate claims of racial discrimination and failure to promote, but defendant argues that plaintiff's claims are based on an alleged failure to hire. Dkt. # 2, at 4-6; Dkt. # 29, at 19. However, defendant does not contest plaintiff's prima facie case under either theory alleged in the complaint, and it is unnecessary for the Court to resolve this issue. Plaintiff relies on the same evidence to support his racial discrimination and failure to promote claims and asserts the same arguments as to pretext, and the Court's ruling on defendant's motion for summary judgment does not depend on whether plaintiff's racial discrimination claims are classified as failure to promote or hire.

[8]     The McDonnell-Douglas analysis also applies to plaintiff's § 1981 claim and the Court will simultaneously consider plaintiff's § 1981 and Title VII claims of racial discrimination. See Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1225 n.4 (10th Cir. 2000).

he applied for and was qualified for the particular position; (3) he was not promoted despite his qualifications; and (4) the position was filled or remained open after he was rejected." Jaramillo v. Colorado Judicial Dep't, 427 F.3d 1303, 1306-07 (10th Cir. 2005). If plaintiff establishes a prima facie case of discrimination, the burden shifts to defendant to come forward with a legitimate non-discriminatory reason for any adverse employment action. Adamson v. Multi Community Diversified Servs., Inc., 514 F.3d 1136, 1145 (10th Cir. 2008). If the defendant provides a legitimate, non-discriminatory reason for its actions, the burden shift to the plaintiff to show that the defendant's explanation is pretextual. Young v. Dillon Cos., Inc., 468 F.3d 1243, 1249 (10th Cir. 2006). Defendant does not contest that plaintiff can establish a prima facie case of racial discrimination, and the Court will proceed to the second step of the McDonnell-Douglas analysis. See Dkt. # 29, at 19.

Defendant states that it terminated plaintiff's temporary employment due to poor performance and disciplinary violations. Id. "The defendant's burden is merely to articulate through some proof a facially nondiscriminatory reason for the termination; the defendant does not at this stage of the proceeding need to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need prove that the reasoning was applied in a nondiscriminatory fashion." EEOC v. Flasher Co., Inc., 986 F.2d 1312, 1316 (10th Cir. 1992). The Tenth Circuit has described the defendant's burden at this stage of the proceedings as "exceedingly light." Zamora v. Elite Logistics, Inc., 478 F.3d 1160, 1165 (10th Cir. 2007). Defendant has stated a legitimate, non-discriminatory reason for terminating plaintiff's temporary employment, and the Court must determine if plaintiff has produced sufficient evidence to show that a genuine issue of material fact exists suggesting that defendant's stated reason is pretextual.

At this stage of the proceeding, the burden shifts to plaintiff to show that defendant's explanation for terminating plaintiff's employment is pretextual. Plotke v.White, 405 F.3d 1092, 1099 (10th Cir. 2005); Salguero v. City of Clovis, 366 F.3d 1168, 1176 (10th Cir. 2004). "A plaintiff demonstrates pretext by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence." Stinnett v. Safeway, Inc., 337 F.3d 1213, 1218 (10th Cir. 2003) (quoting Rea v. Martin Marietta Corp., 29 F.3d 1450, 1455 (10th Cir. 1994)). A plaintiff typically attempts to satisfy his burden by "revealing 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.'" Mackenzie v. City & County of Denver, 414 F.3d 1266, 1278 (10th Cir. 2005) (quoting Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997)). A plaintiff's "mere conjecture" that the employer's explanation is pretext is not a sufficient basis to deny a motion for summary judgment. Branson v. Price River Coal Co., 853 F.2d 786, 772 (10th Cir. 1988).

Defendant argues that circumstantial evidence shows that plaintiff was treated in the same manner as other employees, even if he was not offered a position as a full-time employee, and that plaintiff has not produced any evidence to raise a genuine issue of material fact as to pretext. According to defendant, plaintiff was advised that he was not performing up to expectations and was verbally disciplined or coached for using a cellular telephone. However, defendant acknowledges that it did not keep performance or disciplinary records for temporary employees and there is no written documentation to support defendant's argument. See Dkt. # 29-4, at 10 (Boren states that Paragon did not document "performance-related issues" for temporary employees). Boren recommended plaintiff for a full-time job in the shipping and receiving department, and Paragon

gave plaintiff a pay raise in June 2009. Dkt. # 29-3, at 52; Dkt. # 40-6. Plaintiff testified in his deposition that he believed he was performing his job satisfactorily and no one at Paragon ever advised him that his job performance was not meeting expectations. Dkt. # 40-1, at 34. Plaintiff's deposition testimony has some evidentiary support. Defendant states in its reply that it did not issue discipline of any kind to temporary employees and it simply terminated a temporary employee's employment if his or her work was unsatisfactory. Dkt. # 57, at 9, 17, 19. Plaintiff received a pay raise in June 2009 and defendant admits that this is the first step in converting a temporary employee into a permanent employee. Id. at 8. This supports an inference that plaintiff was satisfactorily performing his duties from at least May to June 2009 and, if plaintiff was truly not meeting expectations, it calls into question why defendant did not terminate plaintiff's temporary employment before August 2009. The Court finds that there is conflicting evidence as to defendant's factual basis for terminating plaintiff's employment and whether plaintiff was a satisfactory employee.[9]

Plaintiff also claims that Boren treated Caucasian employees more favorably in terms of routine discipline, training, and opportunities for permanent hiring. The evidentiary support for plaintiff's arguments is somewhat speculative. It is undisputed that plaintiff did not notify his supervisors or Paragon's human resources department of his beliefs that he was being treated differently because of his race. Plaintiff also does not recall any employee making any derogatory

_____

[9] The Court notes that, if defendant had created and maintained records documenting its reasons for terminating plaintiff's employment, defendant's legitimate, non-discriminatory reason would not be subject to attack merely through plaintiff's conflicting deposition testimony. Rivera, 365 F.3d at, 924-25 (quoting Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1318 (10th Cir. 1999)). However, defendant did not record its reasons for terminating plaintiff's employment until Boren's October 21, 2009 e-mail, and there is a factual dispute as to whether defendant had a legitimate reason to terminate plaintiff's employment on August 7, 2009.

statements in plaintiff's presence about his race. However, he claims that Caucasian employees were not disciplined for using cellular phones and Boren seemed to respond more favorably to requests for assistance from Caucasian employees. Dkt. # 40-1, at 22-23, 41-42. Plaintiff complains that he did not receive adequate training and had to come in for training on his days off. Id. at 40. However, Breedlove was treated in the same manner and he came in for additional training on his days off, and this is not evidence of disparate treatment. Plaintiff claims that Chisum knocked boxes over and plaintiff had to pick up after Chisum, but plaintiff did not report Chisum's conduct to his supervisor and he had no factual basis, other than his own perception, that Chisum's conduct was intended to be discriminatory. Dkt. # 29-3, at 43-44. Thus, plaintiff's circumstantial evidence of racially-motivated harassment or workplace conduct does not independently raise a genuine issue of material fact as to pretext.

Plaintiff argues that defendant's treatment of similarly situated Caucasian employees, Breedlove and Lovelady, shows that defendant's legitimate, non-discriminatory reason for terminating his employment is pretextual. The Tenth Circuit has recognized that a plaintiff may establish pretext by showing that "the employer 'treated [the plaintiff] differently from other similarly-situated employees who violated work rules of comparable seriousness' in order to show that the employer failed to follow typical company practice in its treatment of the plaintiff." Swackhammer v. Sprint/United Management Co., 493 F.3d 1160, 1168 (10th Cir. 2007). An employee is similarly situated if the employee "deals with the same supervisor and is subject to the 'same standards governing performance evaluation and discipline." Kendrick, 220 F.3d at 1232. "Work histories, company policies applicable to the plaintiff and the comparator, and other relevant employment circumstances should be considered when determining whether employees are similarly

situated." <u>Green v. New Mexico</u>, 420 F.3d 1189, 1194 (10th Cir. 2005). Plaintiff has the burden to produce evidence that employees are similarly situated. <u>Riggs v. AirTran Airways, Inc.</u>, 497 F.3d 1108, 1121 n.4 (10th Cir. 2007).

Defendant does not dispute that Breedlove and plaintiff should be treated as similarly situated employees, but argues that Lovelady's prior work experience distinguishes him from plaintiff.[10] Dkt. # 29, at 21. It is undisputed that Lovelady and plaintiff held the same position as temporary employees, and they worked under the same supervisor. Defendant claims that Lovelady previously worked in a plastics plant and he was given a full-time position more quickly than plaintiff based on this prior work experience. <u>Id.</u> Boren testified in his deposition that Lovelady's prior experience was a factor in Paragon's decision to offer Lovelady a permanent position after a relatively short time as a temporary employee. Dkt. # 29-4, at 19. Plaintiff disputes defendant's assessment that Lovelady's prior experience is a distinguishing factor between plaintiff and Lovelady, but Boren's deposition testimony establishes that defendant considered Lovelady's experience as a factor. The Court notes that there are no performance evaluations for plaintiff or Lovelady showing whether Lovelady's prior experience actually made him a better employee. However, prior work experience is a relevant employment circumstance that could distinguish two employees and there is no evidence in the summary judgment record contradicting Boren's

---

[10] In its reply, defendant argues that Breedlove is not similarly situated to plaintiff. Dkt. # 57, at 18. However, defendant clearly stated in its motion for summary judgment that it would concede that Breedlove and plaintiff were similarly situated employees. Dkt. # 29, at 21 ("For the purpose of this Motion, Paragon will accept that Mr. Breedlove is a similarly situated employee to Plaintiff."). Plaintiff relied on this statement when responding to defendant's motion for summary judgment, and the Court will not permit defendant to change positions as to Breedlove's status as a similarly situated employee. Dkt. # 40, at 22. However, defendant is not bound by this concession at trial, because defendant was clear that it conceded this fact only for the purpose of its motion for summary judgment.

deposition testimony; thus, the Court finds that Lovelady's prior work experience is sufficient to distinguish Lovelady and plaintiff. <u>See</u> <u>Brunker v. Schwan's Home Serv., Inc.</u>, 583 F.3d 1004, 1010 (7th Cir. 2009) (experience and education are relevant factors when determining if employees are similarly situated); <u>Williams v. Carolinas Healthcare System</u>, 2011 1131087, *3 (W.D.N.C. Mar. 25, 2011) (same).

The Court finds that plaintiff has produced sufficient evidence to raise a genuine issue of material fact as to pretext. This case is distinguishable from many other employment discrimination cases due to defendant's failure to keep adequate records concerning its temporary employees, and the Court is faced with conflicting deposition testimony from plaintiff and defendant's employees concerning the critical issue of plaintiff's job performance. There is also at least one similarly situated Caucasian employee, Breedlove, who received a permanent position, even though he had worked at Paragon for less time than plaintiff. On a motion for summary judgment, the Court must view conflicting evidence in a light most favorable to the plaintiff, and the Court may not discredit plaintiff's testimony that he was performing his job satisfactorily and that he was not advised that his performance was deficient. Although defendant argues that plaintiff's job performance did not meet expectations, defendant did not keep records or conduct performance evaluations of temporary employees and there is also no meaningful way for the Court to compare plaintiff's job performance with that of Breedlove. The Court notes that this is a close case and some of the circumstantial evidence offered by plaintiff is speculative or is based only on plaintiff's unsupported perception that certain conduct was racially-motivated. However, the Court will err on the side of caution and find that conflicting evidence as to the reason for plaintiff's termination, as well as evidence that at least one similarly situated Caucasian employee was promoted ahead of plaintiff, is sufficient to

raise a genuine issue of material fact that defendant's stated reason for terminating plaintiff's employment is pretextual. Thus, defendant's motion for summary judgment is denied as to plaintiff's claims of racial discrimination under Title VII (First Claim for Relief) and § 1981 (Second Claim for Relief), and plaintiff's failure to promote claim under Title VII (Third Claim for Relief).

## B.

Defendant argues that plaintiff's only complaint of racial discrimination was made after defendant had already decided to terminate plaintiff's temporary employment, and plaintiff cannot establish that he was fired because of his protected conduct. Plaintiff responds that he complained numerous times of defendant's failure to offer him a permanent position and this raises a genuine issue of material fact sufficient for his retaliation claim to survive summary judgment.

Under Title VII, it is unlawful for an employer to take any adverse action against an employee for filing a charge or reporting acts of alleged workplace discrimination. 42 U.S.C. § 2000e-3(a). To make a prima facie case of retaliation, plaintiff must show that: (1) he engaged in protected opposition to discrimination; (2) his employer took an adverse employment action against him; and (3) there is a causal connection between the opposition and the adverse action. Stover v. Martinez, 382 F.3d 1064, 1071 (10th Cir. 2004). The law is clear that reporting workplace discrimination to the EEOC is protected behavior. Anderson v. Coors Brewing Co., 181 F.3d 1171, 1178 (10th Cir. 1999); McCue v. State of Kansas, Dep't of Human Resources, 165 F.3d 784, 789 (10th Cir. 1999). However, the filing of an EEOC charge is not the only type of protected activity and an informal complaint may constitute protected activity if it adequately puts an employer on notice of an employee's allegations of unlawful discrimination. See Petersen v. Utah Dep't of

Corrections, 301 F.3d 1182, 1188 (10th Cir. 2002). An employee may establish causation by showing that the adverse employment action occurred soon after the protected activity. Annett v. University of Kansas, 371 F.3d 1233, 1239-40 (10th Cir. 2004); Burrus v. United Tel. Co. of Kansas, Inc., 683 F.2d 339, 343 (10th Cir. 1982). "Unless there is a very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation." O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1252 (10th Cir. 2001). If the plaintiff can establish a prima facie case of retaliation, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. Pinkerton v. Colorado Dep't of Transp., 563 F.3d 1052, 1064 (10th Cir. 2009). If the employer comes forward with a legitimate, non-discriminatory reason for its actions, the burden shifts to the employee to show that employer's stated reason is pretextual. Id.

The first issue the Court must decide is what protected activity may have occurred before defendant decided to terminate plaintiff's temporary employment. Plaintiff claims that he talked to Mathews about an hour before his shift ended on August 7, 2009, and his employment was terminated about an hour later. Dkt. # 29-3, at 19. Plaintiff also states that he repeatedly called Boren and Frazier beginning about two weeks before he was fired and left messages inquiring as to why he had not been offered a permanent position. Dkt. # 40-1, at 6, 35-38. Plaintiff's deposition testimony establishes that he specifically made allegations of racial discrimination to Mathews at his August 7, 2009 meeting and this could be protected activity. However, plaintiff's deposition testimony is vague as to the nature of the messages left with Frazier and Boren. Assuming for the purpose of summary judgment that plaintiff made such calls, there is no evidence that plaintiff made claims of racial discrimination to Frazier or Boren. Plaintiff's deposition testimony merely shows

that he complained about defendant's failure to hire him on a permanent basis, but there is no basis for the Court to conclude that plaintiff made allegations of racial discrimination before August 7, 2009.

Plaintiff's phone calls to Frazier and Boren do not constitute protected activity, because plaintiff has not shown that his complaints would have put defendant on notice that plaintiff intended to allege claims of racial discrimination. The Tenth Circuit has stated that

> Although no magic words are required, to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by [Title VII]. General complaints about company management . . . will not suffice.

Hinds v. Spring/United Management Co., 523 F.3d 1187, 1203 (10th Cir. 2008); see also Petersen, 301 F.3d at 1188 (the employee's complaints must give adequate notice to the employer that the employee is complaining of conduct prohibited by Title VII). Plaintiff's deposition testimony provides no reasonable basis for the Court to infer that plaintiff notified Frazier or Boren that he believed that defendant's failure to offer him a permanent position was racially motivated. However, plaintiff's conversation with Mathews does constitute protected activity because he allegedly told Mathews that he "was not being hired because of [his] race." Dkt. # 29-3, at 19. This would have put defendant on notice of plaintiff's allegations of racial discrimination, and this is sufficient to meet plaintiff's burden for the first element of a prima facie claim of retaliation. It is undisputed that plaintiff can satisfy the second element of his prima facie case, because his temporary employment was terminated and this qualifies as an adverse employment action.

Viewing the evidence in a light most favorable to plaintiff, the Court finds that plaintiff has not shown that he engaged in any protected activity before the decision was made to terminate his temporary employment and there is no causal connection between his protected activity and any

adverse employment action. Even though plaintiff engaged in protected conduct, there is no causal connection between plaintiff's conduct and his termination, because his conversation with Mathews occurred after defendant had decided to terminate plaintiff's employment and hire a new temporary employee. At 10:46 a.m. on August 7, 2009, Boren sent an e-mail to Frazier requesting that she hire a new temporary employee to replace plaintiff, and it is clear that Boren had already decided to terminate plaintiff's employment. Dkt. # 29-13. Plaintiff did not speak with Mathews until 7:00 p.m. later that day. Dkt. # 29-3, at 19. Because plaintiff's protected conduct occurred after the decision to terminate his employment was final, it is not possible for plaintiff to show that his protected activity had any causal connection to an adverse employment action. Thus, plaintiff cannot establish a prima facie claim of retaliation and defendant is entitled to summary judgment on this claim.

## C.

Defendant seeks summary judgment on plaintiff's claim of intentional infliction of emotional distress, and argues that plaintiff's allegations of racial discrimination are insufficient to rise to the level of extreme and outrageous conduct. Dkt. # 29, at 25-26. Plaintiff's response to defendant's motion for summary judgment does not offer any argument in support of plaintiff's intentional infliction of emotional distress claim.

Oklahoma courts have recognized a cause of action for intentional infliction of emotional distress, also known as the tort of outrage. See Gaylord Entertainment Co. v. Thompson, 958 P.2d 128, 149 (Okla. 1998). The action is governed by the narrow standards laid out in the Restatement Second of Torts, § 46. Id. In Breeden v. League Services Corp., 575 P.2d 1374 (Okla. 1978), the Oklahoma Supreme Court explained:

Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

Id. at 1376. To state a claim, a plaintiff must allege that "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." Schovanec v. Archdiocese of Oklahoma City, 188 P.3d 158, 175 (Okla. 2008) (quoting Computer Publ'ns, Inc. v. Welton, 49 P.3d 732, 735 (Okla. 2002)). Under Oklahoma law, the trial court must assume a "gatekeeper role" and make an initial determination that the defendant's conduct "may be reasonably regarded as sufficiently extreme and outrageous to meet the Restatement § 46 standards." Trentadue v. United States, 397 F.3d 840, 856 n.7 (10th Cir. 2005) (applying Oklahoma law). If reasonable persons could reach differing conclusions in the assessment of the disputed facts, the Court should submit the claim to the jury to determine whether the defendant's conduct could result in liability. Id. The Court is to make a similar threshold determination with regard to the fourth prong, the presence of severe emotional distress. Id.

In cases arising out of the workplace, Oklahoma appellate courts have found that a defendant engaged in extreme and outrageous conduct only when that defendant intentionally and persistently engaged in a course of conduct that harmed the plaintiff. See Computer Publ'ns, 49 P.3d at 736 (claim should have been submitted to a jury when plaintiff presented evidence that harassment lasted more than two years and caused plaintiff to quit her job, move, and repeatedly change phone numbers); Miner v. Mid-America Door Co., 68 P.3d 212 (Okla. Civ. App. 2002) (employer's alleged

19

failure to reassign the plaintiff after learning of workplace harassment, even if unreasonable, was not extreme and outrageous); <u>Gabler v. Holder & Smith, Inc.</u>, 11 P.3d 1269 (Okla. Civ. App. 2000) (noting that workplace harassment rarely rises to the level of extreme and outrageous conduct); <u>Mirzaie v. Smith Cogeneration, Inc.</u>, 962 P.2d 678 (Okla. Civ. App. 1998) (employer's conduct was not extreme and outrageous when, <u>inter alia</u>, the plaintiff's manager made derogatory sexual remarks about the plaintiff, woke plaintiff up in the middle of the night to do unnecessary work, and terminated him two hours before his wedding); <u>Zahorsky v. Community Nat'l Bank of Alva</u>, 883 P.2d 198 (Okla. Civ. App. 1994) (employer not liable for intentional infliction of emotional distress when an employee forced the plaintiff to have sex with him and employer failed to fire the employee, even though the employer allegedly knew about the conduct).

Plaintiff has not shown that defendant engaged in extreme and outrageous conduct, and defendant is entitled to summary judgment on plaintiff's claim of intentional infliction of emotional distress. There is no evidence that defendant or its employees engaged in a pattern of consistent and severe discriminatory conduct. At most, plaintiff perceived certain actions to be motivated by racial discrimination and defendant eventually chose not to offer plaintiff a permanent position. This does not rise to the level of extreme and outrageous conduct under Oklahoma law, and plaintiff's response to defendant's motion for summary judgment makes no argument as to the viability of this claim. Plaintiff has also produced no evidence that he suffered severe emotional distress as a result of defendant's conduct, and this is also a threshold requirement for any plaintiff asserting a claim of intentional infliction of emotional distress. <u>See</u> <u>Trentadue</u>, 397 F.3d at 856.

**IT IS THEREFORE ORDERED** that Defendant Paragon Films, Inc.'s Motion for Summary Judgment and Brief in Support (Dkt. # 29) is **granted in part** and **denied in part**: it is granted as to plaintiff's claims of intentional infliction of emotional distress (Fourth Claim for Relief) and retaliation under Title VII (Fifth Claim for Relief), and it is denied as to all other claims.

**DATED** this 28th day of April, 2011.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT